# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 13

### OCTOBER TERM, A.D. 2019

February 3, 2020

RANDALL JOE PYLES,

Appellant
(Defendant),

v.

S-19-0061

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable Michael N. Deegan, Judge

*Representing Appellant:*

Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, Prosecution Assistance Program; Mackenzie Morrison, Student Director; Toni Hartzel, Student Intern.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    A jury found Randall Joe Pyles guilty of possession with intent to deliver marijuana. Mr. Pyles claims the State's trial evidence was insufficient to establish he possessed the marijuana. We affirm.

## ISSUE

[¶2]    Mr. Pyles presents a single issue, which we restate as:

>       Was the trial evidence sufficient to prove Mr. Pyles constructively possessed the marijuana?

## FACTS

[¶3]    On April 14, 2018, Christopher Johnson was driving on Interstate 90 in Campbell County, Wyoming, en route from Oregon to Terre Haute, Indiana. Mr. Pyles was a passenger in the car. Wyoming Highway Patrol Trooper Harley Kalb stopped Mr. Johnson for speeding. Trooper Kalb asked for Mr. Johnson's identification and requested that he accompany him to the patrol car to complete the paperwork for the traffic stop.

[¶4]    Mr. Johnson said he had rented the car and showed Trooper Kalb the rental agreement on his phone. After examining the agreement, the trooper returned to the rental car to verify the vehicle identification number. Before doing so, he stopped at the passenger-side window to explain to Mr. Pyles what he was doing. While talking to Mr. Pyles through the open window, the trooper smelled a strong odor of raw marijuana. Trooper Kalb called for backup to help search the car. Mr. Pyles had a backpack and coat in the backseat of the car. No contraband was located in the search of those items. The officers then searched the trunk and located two duffle bags containing over 30 pounds of marijuana bud packaged in individual one-pound vacuum-sealed packages.

[¶5]    The State charged Mr. Pyles with one count of possession with intent to deliver marijuana in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii) (LexisNexis 2017). A jury found Mr. Pyles guilty of the charged offense, and the district court sentenced him to a term of incarceration of four to nine years, suspended the sentence, and placed him on supervised probation for nine years. Mr. Pyles appealed.

## DISCUSSION

[¶6]    When reviewing a claim that the evidence was insufficient to support a jury's verdict in a criminal trial, we do not determine whether the evidence established the defendant's guilt beyond a reasonable doubt. *Thompson v. State,* 2018 WY 3, ¶ 14, 408 P.3d 756, 760 (Wyo. 2018); *Mraz v. State,* 2016 WY 85, ¶ 19, 378 P.3d 280, 286 (Wyo. 2016). Instead,

we decide whether the evidence could reasonably support the jury's verdict. *Id.* We examine "'the evidence in the light most favorable to the State. We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it.'" *Thompson,* ¶ 14, 408 P.3d at 761 (quoting *Worley v. State,* 2017 WY 3, ¶ 17, 386 P.3d 765, 771 (Wyo. 2017)) (other citations omitted). *See also, Weston v. State,* 2019 WY 113, ¶ 11, 451 P.3d 758, 762 (Wyo. 2019). We do not re-weigh the evidence or re-examine the credibility of the witnesses, and we "disregard any evidence favorable to the appellant that conflicts with the State's evidence." *Thompson,* ¶ 14, 408 P.3d at 761 (citation omitted).

[¶7]    Mr. Pyles was convicted of possession with intent to deliver marijuana under § 35-7-1031(a)(ii):

> (a)    Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:
>     . . .
>     (ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both[.]

Marijuana (spelled "marihuana" in the statute) is a Schedule I controlled substance. Wyo. Stat. Ann. § 35-7-1014(d)(xiii) (Lexis Nexis 2019).

[¶8]    Mr. Pyles claims the State failed to prove he possessed the marijuana. Possession of a controlled substance can be actual or constructive. *Regan v. State,* 2015 WY 62, ¶ 12, 350 P.3d 702, 705 (Wyo. 2015); *Sotolongo-Garcia v. State,* 2002 WY 185, ¶ 12, 60 P.3d 687, 689-90 (Wyo. 2002); *Wise v. State,* 654 P.2d 116, 118-19 (Wyo. 1982). A person has actual possession of a controlled substance when he has direct physical custody over it. *Regan,* ¶ 12, 350 P.3d at 705. A person has constructive possession of a controlled substance when he either individually or jointly with another exercises dominion and control over the substance, has knowledge of its presence, and has knowledge the substance is a controlled substance. *Taylor v. State,* 2011 WY 18, ¶ 11, 246 P.3d 596, 599 (Wyo. 2011) (citing *Cureton v. State,* 2007 WY 168, ¶ 16, 169 P.3d 549, 552 (Wyo. 2007)). Constructive possession may be proven "'by circumstantial evidence linking together a series of facts allowing a reasonable inference that the defendant had the requisite knowledge and control of the substance.'" *Taylor,* ¶ 11, 246 P.3d at 599-600 (quoting *Cureton,* ¶ 16, 169 P.3d at 552). "When determining whether sufficient evidence was presented demonstrating constructive possession, the Court must consider the totality of the circumstances." *Taylor,* ¶ 11, 246 P.3d at 600 (citing *Urrutia v. State,* 924 P.2d 965, 967 (Wyo. 1996)).

[¶9]   There are important caveats when considering the concept of constructive possession.  First, the mere fact the defendant was present in a vehicle where controlled substances were discovered does not prove he constructively possessed them.  *Regan,* ¶ 23, 350 P.3d at 708 (citing *Rodarte v. City of Riverton,* 552 P.2d 1245, 1257 (Wyo. 1976)).  Furthermore, evidence showing the defendant knew controlled substances were in his presence does not, by itself, establish he had the power and intent to control them.  *Id.,* ¶ 24, 350 P.3d at 708.

[¶10]  The district court instructed the jury about the concepts of actual and constructive possession.  The State argued at trial, and reiterates on appeal, the evidence shows Mr. Pyles actually and constructively possessed the marijuana found in the trunk of the car.  Because there is ample evidence Mr. Pyles had constructive possession of the marijuana, we need not consider the State's argument regarding actual possession.

[¶11]  Mr. Pyles argues the State did not prove he constructively possessed the marijuana because the car was driven and rented by Mr. Johnson and there was no evidence he had access to the trunk or the marijuana found therein.  Contrary to our standard of review, Mr. Pyles ignores the State's evidence showing he constructively possessed the marijuana.

[¶12]  The evidence showed Mr. Pyles knew there was marijuana in the car.  Trooper Kalb smelled a very strong odor of raw marijuana when speaking with Mr. Pyles through the car's front passenger-side window.  The trooper testified it would have been impossible for a person in the car not to smell the marijuana.  Evidence from Mr. Pyles' cell phone was admitted at trial, including numerous photographs of raw marijuana bud taken during the prior week.  Mr. Pyles admitted he took those photographs; consequently, he would have been familiar with the smell of raw marijuana.

[¶13]  Mr. Pyles does not claim he was unaware that marijuana was classified as a controlled substance.  In any event, the trial evidence confirmed he knew marijuana was an illegal controlled substance in some states.  The text records from Mr. Pyles' phone were admitted into evidence as State's Exhibit 25.[1]  His text messages indicated he knew transporting and selling the marijuana was "risky" and he had to be "very, very careful," but he could make "big money" doing so.

---

[1] The State gave notice pursuant to W.R.E. 404(b) that it intended to offer at trial the text messages from Mr. Pyles' cell phone as evidence of opportunity, intent, preparation, plan and knowledge.  Mr. Pyles objected to the admission of the evidence, and the district court held a hearing on the matter.  The court subsequently entered a detailed order addressing the factors required by *Gleason v. State,* 2002 WY 161, 57 P.3d 332 (Wyo. 2002), and similar cases.  It granted in part and denied in part Mr. Pyles' request to exclude the evidence and offered to give an appropriate limiting instruction at trial.  Mr. Pyles' counsel declined a limiting instruction, so none was given.  The court did instruct the jury that it was to consider the text messages received by Mr. Pyles not for the truth of the matter asserted, but only as context for Mr. Pyles' messages.  Mr. Pyles does not challenge the Rule 404(b) ruling in this appeal.

[¶14] The State also presented evidence showing Mr. Pyles had dominion and control over the marijuana. To prove Mr. Pyles had control of the marijuana, the State was required to show he had an "'appreciable ability to guide [its] destiny.'" *Regan,* ¶ 18, 350 P.3d at 706 (quoting *United States v. Al–Rekabi,* 454 F.3d 1113, 1118 (10th Cir. 2006)). Because there was another person in the vehicle where the marijuana was found, the State had to show Mr. Pyles was individually connected to the marijuana to prove he constructively possessed it. *United States v. Valadez-Gallegos,* 162 F.3d 1256, 1262 (10th Cir. 1998).

[¶15] When Trooper Kalb stopped Mr. Johnson on April 14, 2018, Mr. Johnson and Mr. Pyles were en route from Oregon to Terre Haute, Indiana. Mr. Pyles testified he had moved from Terre Haute to Oregon approximately two months earlier, in February 2018. In the weeks leading up to the traffic stop, Mr. Pyles communicated by text message with various individuals about his participation in a marijuana grow operation in Oregon. He took photographs of marijuana buds and the process of trimming them. He texted that he was "trim[m]ing 30 pounds and making oil." Mr. Pyles admitted when he testified at trial that he had trimmed marijuana in Oregon shortly before his trip to Indiana.

[¶16] Mr. Pyles texted about the need to get the bud trimming finished by April 12, 2018, so he could begin his trip to Terre Haute. Gillette police officer Jesse Lile, who had worked with the Wyoming Division of Criminal Investigation drug task force, testified marijuana buds have to be trimmed prior to sale and trimming is a tedious and time-consuming process. At various times, Mr. Pyles texted people in Indiana about the large amount of marijuana he had access to and the different strains of "herb" or "weed," including bright green Pineapple Express, God Bud and Hindu Kush, he would bring "back." On April 11th, Mr. Pyles said the marijuana was packaged in "turkey bags."

[¶17] Mr. Pyles stated in text messages that he planned to make a great deal of money on his trip. When he and Mr. Johnson began their journey on April 12, 2018, he texted an acquaintance that he was "surrounded by weed" worth "[l]ike 150 grand" and he was "taking over the game in Indiana." Mr. Pyles admitted at trial that he was texting people in Indiana about having large amounts of marijuana for sale.

[¶18] Mr. Pyles claims that, while the evidence showed he had access to marijuana in Oregon, there is no evidence demonstrating the Oregon marijuana was the same marijuana law enforcement found in the car in Wyoming. We disagree. The jury could reasonably infer from the totality of the evidence that Mr. Pyles prepared the marijuana in Oregon for sale in Indiana and he and Mr. Johnson were transporting it through Wyoming for that purpose.

[¶19] Mr. Pyles cites several cases in support of his claim that the State did not present sufficient evidence showing he had possession of the seized marijuana, including *Valadez-Gallegos, supra*; *Maxwell v. State,* 518 S.E.2d 432 (Ga. Ct. App. 1999); *People v. Mosley,*

265 N.E.2d 889 (Ill. Ct. App. 1971); and *United States v. Sanchez-Mata,* 925 F.2d 1166 (9th Cir. 1991). Those cases apply the caveats discussed above, i.e., that a defendant's mere presence in a vehicle where controlled substances are found or his knowledge of the presence of controlled substances is not enough to establish that he constructively possessed them. *Valadez-Gallegos,* 162 F.3d at 1262-63; *Maxwell,* 518 S.E.2d at 434; *Mosley,* 265 N.E.2d at 891; and *Sanchez-Mata,* 925 F.2d at 1169. The prosecution must prove the defendant had dominion and control over the controlled substance. *Id.*

[¶20] Mr. Valadez-Gallegos was a passenger in a pickup truck when a large amount of ephedrine, which is used to manufacture methamphetamine, was found hidden in the ceiling of the attached camper shell. *Valadez-Gallegos,* 162 F.3d at 1257-58. The Tenth Circuit ruled the prosecution's evidence failed to link Mr. Valadez-Gallegos to the narcotics in any way other than his presence in the pickup and proximity to the drugs located in the camper shell. *Id.* at 1262. The court remarked there was no evidence Mr. Valadez-Gallegos had ever accessed the camper. *Id.* at 1263. The court also stated that, although there was "a pervasive smell of perfumed dryer sheets"[2] in the camper shell, the odor was not detectable in the passenger compartment of the pickup. *Id.* The prosecution in *Valadez-Gallegos* presented a map with annotations showing times and distances; however, there was no evidence specifically connecting the map to drug activity or showing who made the annotations or when they were made. *Id.* at 1258, 1263. There was simply no evidentiary link between Mr. Valadez-Gallegos and the drugs found in the camper shell. *Id.* at 1262-64. *See also*, *Maxwell,* 518 S.E.2d at 434 (evidence that defendant was a passenger in a vehicle where cocaine was found and that she had possessed cocaine on a previous occasion was insufficient to establish constructive possession); *Mosley,* 265 N.E.2d at 890-91 (evidence that defendant was a passenger in a car where marijuana was found and had offered the officers a bribe was insufficient to establish constructive possession); *Sanchez-Mata,* 925 F.2d at 1169 (evidence that defendant was a passenger in a vehicle where controlled substances were found was insufficient to establish he had dominion and control over the substances).

[¶21] The evidence in the cases cited by Mr. Pyles did not include proof that the defendants had knowledge of, and control over, the controlled substances found in the vehicles. In this case, by contrast, the smell of raw marijuana in the passenger compartment and the evidence on Mr. Pyles' phone demonstrated he knew there was marijuana in the car. The text messages and photographs on his phone and his own trial testimony proved he exercised dominion and control over the marijuana by preparing it for sale and making plans to sell it in Indiana. He was en route to Indiana with thirty pounds of marijuana, just

---

[2] Fabric softener and dryer sheets are used to mask the odor of controlled substances while they are being transported. *See, e.g.*, *Feeney v. State,* 2009 WY 67, ¶¶ 16-17, 208 P.3d 50, 55 (Wyo. 2009) (strong scent of dryer sheets in a car contributed to the trooper's reasonable suspicion of drug-related crimes); *United States v. Cheromiah,* 455 F.3d 1216, 1223 (10th Cir. 2006) (odor of dryer sheets in a vehicle "created reasonable suspicion that drugs were present").

as his text messages indicated he would be.  The State's evidence was clearly sufficient to establish Mr. Pyles had constructive possession of the marijuana in the trunk.

[¶22]   Affirmed.