# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 142

OCTOBER TERM, A.D. 2020

November 23, 2020

DALLAS CLEM MITCHELL,

Appellant
(Defendant),

v.

S-20-0086

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel. Argument by Ms. Cooper.

*Representing Appellee:*

Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General. Argument by Mr. Zintak.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   A Wyoming Highway Trooper stopped Dallas Clem Mitchell for a traffic violation.  While Mr. Mitchell was outside the vehicle, his passenger, Bret Allyn Feser, jumped over the console, put the car in gear, and sped away, leading law enforcement on a high-speed chase.  A search of the vehicle uncovered 74.19 pounds of marijuana and 139.5 grams of marijuana concentrate.  Mr. Mitchell appeals his convictions for possession with intent to deliver and conspiracy to deliver a controlled substance.  We affirm.

## ISSUES

[¶2]   We rephrase the issues:

> I.      Did the district court err when it allowed the State to play a recorded phone call between Mr. Mitchell and his co-defendant?
>
>> A.    Did the district court abuse its discretion when it admitted the recording over his relevance objection?
>>
>> B.    Did the district court abuse its discretion when it admitted the recording without conducting a *Gleason* analysis?
>
> II.     Did the district court abuse its discretion when it refused to give Mr. Mitchell's proposed modification to the pattern jury instruction on possession?
>
> III.    Was the evidence sufficient to support Mr. Mitchell's convictions for possession and conspiracy?

## FACTS

[¶3]   Shortly after midnight on August 26, 2018, Wyoming Highway Trooper Kevin Legerski followed a Toyota Corolla with California license plates as it passed through a construction zone on I-90 near Sheridan.  When he saw the car come so close to the traffic cones that he thought it would hit them, and then drift across the lane over the fog line, he activated his dash camera.  The car continued to weave and Trooper Legerski activated his lights and pulled it over.

1

[¶4]    As Trooper Legerski approached, he saw two men and two dogs in the car, and one of the dogs, which looked like a gray pit-bull, was acting "rather protective."  He identified the driver as Dallas Mitchell and the passenger as Bret Feser.  The men were on a road trip that apparently began in Oregon.  When Trooper Legerski told the men why he had pulled them over, Mr. Mitchell said he was "just tired" and asked if they should switch drivers.  Trooper Legerski answered, "Well, let's just wait a second and try to figure this out."

[¶5]    As they spoke, Trooper Legerski smelled a strong odor of raw marijuana coming from inside the vehicle.  He asked "where the weed was" and Mr. Feser produced from the glove box a brown paper bag that appeared to contain dispensary items.  Mr. Feser stated the items in the bag were his.  Mr. Mitchell handed him a green metal grinder which appeared to contain a small amount of marijuana and stated it belonged to him.

[¶6]    Trooper Legerski then asked Mr. Mitchell to step out of the vehicle so that he could perform a sobriety test.  As he left the vehicle, Mr. Mitchell asked if he could put on a sweatshirt because it was a chilly night.  Trooper Legerski agreed, and Mr. Mitchell reached into the car and put on a yellow or bright green Puma hoody, which was later found to have the tag on it from the department store, Ross.  Mr. Mitchell admitted that he had smoked marijuana the prior evening.  Mr. Mitchell successfully completed the sobriety test, and Trooper Legerski asked him again if there was any more marijuana in the vehicle because "sometimes people have user amounts in the glove box, but then have a hay bale in the trunk."  Trooper Legerski said he needed to check the car for more marijuana before citing Mr. Feser for misdemeanor possession and letting them go.  Around that time, Sheridan County Sheriff's Deputy, Ryan Kerns, arrived.

[¶7]    As they were trying to figure out how to get the dogs out of the car, Mr. Feser jumped over the console into the driver's seat, threw the car into gear, and sped away.  Leaving Mr. Mitchell with Deputy Kerns, Trooper Legerski ran to his patrol car to pursue Mr. Feser.  Deputy Kerns told Mr. Mitchell he was going to place him in investigative detention, cuffed him, and drove him to the Sheridan County Detention Center.

[¶8]    The pursuit of Mr. Feser at times reached speeds over 100 miles per hour, and eventually entered Campbell County.  At one point, Mr. Feser hit a deer but continued to flee.  The chase ended when law enforcement spiked the Corolla's tires.  Mr. Feser fled the vehicle on foot, leaving the dogs behind.  Several hours later, law enforcement located him and took him into custody without incident.

[¶9]    With the help of another officer, known as the "dog whisperer," Trooper Legerski was able to coax the dogs from the vehicle so they could search it.  They found three roller bags filled with multiple vacuum-sealed packages of a green leafy substance in the trunk, and various amounts of dispensary items and suspected marijuana in the center console, glove box, and passenger door pocket.  They also found a black backpack that

contained numerous money bands with different colors and labels ranging from $100 to $10,000; another roller bag which contained more vacuum-sealed packages of suspected marijuana; and a large garbage bag, which contained clothing that Mr. Mitchell later claimed was his, a Ross department store shopping bag, and another black bag containing a stack of money bands. All together, they found 74.19 pounds of marijuana, and 139.5 grams of a marijuana concentrate known as "shatter." Each of the roller bags still had Ross price tags attached.

[¶10] Mr. Mitchell was charged with possession of a controlled substance with intent to deliver, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii), and with conspiracy to deliver a controlled substance, in violation of Wyo. Stat. Ann. §§ 35-7-1042 and 35-7-1031(a)(i). He filed a demand for disclosure under Wyoming Rules of Evidence 404(b). The State did not respond. The State did file a pre-trial memorandum listing potential witnesses and exhibits, and an amended memorandum adding to its exhibits list a DVD with several jail phone calls from Mr. Feser to Mr. Mitchell.

[¶11] At Mr. Mitchell's trial, the State called Special Agent John Kelly Broad of the Wyoming Division of Criminal Investigation, who interviewed Mr. Mitchell after his arrest. Special Agent Broad testified that he monitored all of the calls at the Sheridan County Detention Center between Mr. Mitchell and Mr. Feser. Several calls were made when Mr. Feser was still incarcerated and Mr. Mitchell was out on bond, and Special Agent Broad testified that he identified Mr. Mitchell in those calls by his voice, by his phone number, and because he believed Mr. Mitchell identified himself as "Dallas" on at least one of the calls.

[¶12] Mr. Mitchell's attorney indicated concern that Special Agent Broad was going to testify to the substance of the conversations. In a lengthy sidebar, which we summarize for clarity, the defense raised numerous objections, including the best evidence rule, foundation, relevance, and hearsay, among others. The court overruled the hearsay objection, stating that Mr. Mitchell's statements are not hearsay. The court sustained the best evidence rule objection, and asked what Special Agent Broad's testimony would be. The State indicated it would show that Mr. Mitchell had apologized to Mr. Feser for driving through Wyoming, that he intended to pay Mr. Feser's bond, and that the men talked in detail about the stop. The court asked why the State had not simply prepared a tape with the relevant statements, and the State responded that doing so would be extremely time consuming and it felt Special Agent Broad's testimony was the best way to introduce Mr. Mitchell's statements. Skeptical, the court ordered a 15-minute recess for the State to determine the extent of the recordings, and the State returned with the single, unedited, 26-minute recording now at issue. Over Mr. Mitchell's renewed hearsay and foundation objections, the court admitted the recording, and the State played it in full.

[¶13]   The jury heard Mr. Mitchell apologize to Mr. Feser for taking a route through Wyoming instead of staying on I-94 (in Montana).  They heard Mr. Mitchell say he felt guilty being free while Mr. Feser was not.  And they heard him say he intended to help pay for Mr. Feser's $25,000 bond, even if it meant he had to sell his house.  Throughout the call, the men also laughed and joked about the stop and the details of Mr. Feser's flight.  They criticized the State for prosecuting them for what they felt was a small amount of a relatively harmless drug compared to "dope."  And they talked about how each had resisted pressure to turn on one another in order to get a "deal."

[¶14]   Mr. Mitchell also discussed his current legal troubles in South Dakota:

- "South Dakota's trying to give me the business, they're trying to fry me."

- "I called him today, like I talk to my PO every day, and he told me there's no warrant out for me and they're trying to work with me.  But they're trying to trick me bro, honestly, they want me back on violation—they want me behind bars."

- "South Dakota is trying to f*** me up right now so I can't get proper, proper assets to deal with things, or the proper, like . . . I can't deal with it from South Dakota anyways, you know, once they put me in South Dakota incarceration, I'm f***ed."

Finally, Mr. Mitchell mentioned his criminal history, saying, "Yeah, and I had half a pound of weed before in my life, that's it."

[¶15]   Mr. Mitchell's counsel offered a jury instruction drawn from language in *Regan v. State*, 2015 WY 62, 350 P.3d 702 (Wyo. 2015), a felony possession case with similar facts, but the court rejected it, preferring the pattern instruction the State offered.  The jury returned a unanimous verdict of guilty on both counts.  Mr. Mitchell was sentenced to 4 to 6 years incarceration on each charge, to run concurrently.  He timely appealed.

### *DISCUSSION*

### I.   *Admission of the Recorded Jail Conversation*

[¶16]   Mr. Mitchell raises two arguments with respect to the admission of the recorded jail conversation.  First, he questions the relevance of the statements for which it was introduced.  Second, he contends the prior bad acts statements, which the jury also heard,

4

were admitted in violation of the State's obligation to provide pretrial 404(b) notice, resulting in prejudice to him.

## A. The District Court Did Not Abuse Its Discretion by Admitting the Recording over Mr. Mitchell's Relevance Objection

### 1. Standard of Review

[¶17] We review evidentiary rulings for abuse of discretion. *Gonzalez-Chavarria v. State*, 2019 WY 100, ¶ 11, 449 P.3d 1094, 1096 (Wyo. 2019). "Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence." *Spence v. State*, 2019 WY 51, ¶ 42, 441 P.3d 271, 282 (Wyo. 2019) (quoting *Overson v. State*, 2017 WY 4, ¶ 26, 386 P.3d 1149, 1154 (Wyo. 2017)). We will not disturb the trial court's determination of the admissibility of evidence unless the court clearly abused its discretion. *Spence*, 2019 WY 51, ¶ 42, 441 P.3d at 282 (citing *Overson*, 2017 WY 4, ¶ 26, 386 P.3d at 1154). We need only determine whether the court could have reasonably concluded as it did. *Hardman v. State*, 2020 WY 11, ¶ 11, 456 P.3d 1223, 1227 (Wyo. 2020); *Overson*, 2017 WY 4, ¶ 26, 386 P.3d at 1154. If we find the evidence was admitted in error, then we consider whether the error was prejudicial. *Dixon v. State*, 2019 WY 37, ¶ 40, 438 P.3d 216, 231 (Wyo. 2019).

### 2. The Statements Were Relevant

[¶18] At trial, Mr. Mitchell questioned whether the statements the State intended to introduce from the call were relevant or probative. We treat this as an objection on the grounds of W.R.E. 401 and 402. The district court did not squarely rule on the objection, however the ultimate admission of the tape implies a tacit ruling. *See Jones v. State*, 2019 WY 45, ¶ 21, 439 P.3d 753, 759 (Wyo. 2019) ("Even though the district court did not make a specific finding that the statements' probative value outweighed their potential for unfair prejudice, careful consideration of the statements' relevancy is implicit in the court's analysis."). Mr. Mitchell contends the statements the State wanted to introduce (his apology for driving through Wyoming, that he intended to help with Mr. Feser's bond money, and his discussion of the details of the chase and stop) had no bearing on whether Mr. Mitchell was guilty of possession with intent to deliver or whether there was a conspiracy to deliver between the men. At best, Mr. Mitchell contends the statements only show he regretted that they were pulled over, he knew Mr. Feser well enough to want to help him secure bond, and the circumstances of the high-speed chase were dramatic. He claims his statements "showed no indicia of self-professed knowledge what would be done with the drugs or a conspiracy regarding what would be done with them." The State responds the offered statements are relevant to the elements of conspiracy because a jury could reasonably infer from them that Mr. Mitchell knew about the marijuana, intended to deliver it, and there was a tacit understanding

5

between him and Mr. Feser to carry out that crime. The State further argues that even though it did not proffer Mr. Mitchell's statements criticizing law enforcement for focusing on marijuana instead of harder drugs, that statement was relevant to Mr. Mitchell's intentional possession of the large volume of marijuana in the car.

[¶19] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible." W.R.E. 402. The State argues that the court considered relevance to the extent that it inquired what statements the State intended to introduce through Special Agent Broad's testimony. The State answered:

> He would be testifying that in listening to these recordings, that the defendant was apologizing for driving through Wyoming, that he was attempting to get money to pay for Mr. Feser's bond, he, again, talked in detail about the stop and the nature of the stop and what's happened after that.

The elements of conspiracy are an agreement and an intent to jointly commit the elements of an offense. *Ekholm v. State*, 2004 WY 159, ¶ 22, 102 P.3d 201, 207 (Wyo. 2004). Conspiracies may be proven by circumstantial evidence. *Jordin v. State*, 2018 WY 64, ¶ 19, 419 P.3d 527, 533 (Wyo. 2018). Circumstantial evidence of a conspiracy may include a defendant's course of conduct. *Id*. Mr. Mitchell's apology for driving through Wyoming and his declared intent to help Mr. Feser with his bond were relevant to whether Mr. Mitchell intended to commit the elements of delivery of a controlled substance and whether there was a tacit understanding between him and Mr. Feser to carry out the crime together. Because those statements were relevant to the existence of a conspiracy, the district court did not abuse its discretion by admitting them.

## B. The District Court Did Not Abuse Its Discretion by Failing to Conduct a 404(b) Analysis before Admitting the Recording

### 1. Standard of Review

[¶20] Mr. Mitchell claims certain of his statements in the recorded call implicate prior bad acts subject to W.R.E. 404(b); therefore the trial court abused its discretion by failing to prohibit the statements after conducting a *Gleason* analysis, and the error prejudiced him. We review decisions on the admissibility of 404(b) evidence in two parts; first for abuse of discretion, assuming the court performed some sort of analysis under the *Gleason* framework. *Blanchard v. State*, 2020 WY 97, ¶ 19, 468 P.3d 685, 691 (Wyo. 2020) (citing *Gleason v. State*, 2002 WY 161, 57 P.3d 332 (Wyo. 2002)). Second, if we

6

find error, or if the first prong is unreviewable because no analysis occurred, our inquiry turns to whether the admission was prejudicial. *Blanchard*, 2020 WY 97, ¶ 19, 468 P.3d at 691-92 (citing *Broberg v. State*, 2018 WY 113, ¶¶ 16, 19, 428 P.3d 167, 171-72 (Wyo. 2018)).

[¶21] We treat Mr. Mitchell's pretrial demand for notice of the State's intent to use evidence subject to 404(b) as a timely objection, preserving his arguments on appeal for abuse of discretion review. *Putnam v. State*, 2020 WY 133, ¶ 26, 474 P.3d 613, 620 (Wyo. 2020) (citing *Howard v. State*, 2002 WY 40, ¶ 32, 42 P.3d 483, 494 (Wyo. 2002)); *see also Winters v. State*, 2019 WY 76, ¶ 79, 446 P.3d 191, 215 (Wyo. 2019). However, where, as here, the State does not respond to the defendant's demand for notice of its intent to use 404(b) evidence, a potential 404(b) issue cannot be anticipated by the defendant, much less the court. Therefore, unless the defendant immediately recognizes the evidence as subject to 404(b) and objects on those grounds, there can be no exercise of discretion for us to review. *See Blanchard*, 2020 WY 97, ¶¶ 19-20, 468 P.3d at 691-92; *Vinson v. State*, 2020 WY 93, ¶ 24, 467 P.3d 1009, 1014 (Wyo. 2020); *Broberg*, 2018 WY 113, ¶¶ 16, 19, 428 P.3d at 171-72; *Wiese v. State*, 2016 WY 72, ¶ 18, 375 P.3d 805, 808 (Wyo. 2016). Our analysis is thus constrained to the question of prejudice. *Blanchard*, 2020 WY 97, ¶ 20, 468 P.3d at 692. This Court finds an error is prejudicial when "there is a reasonable probability that the result would have been more favorable to the defendant had the error not occurred." *Larkins v. State*, 2018 WY 122, ¶ 94, 429 P.3d 28, 49-50 (Wyo. 2018) (in context of prosecutorial misconduct, Court noted difficulty of distinguishing between "probability" and "possibility" and resolved to apply "probability" to prejudice analysis). "Prejudicial error requires reversal, while harmless error does not." *Volpi v. State*, 2018 WY 66, ¶ 33, 419 P.3d 884, 894 (Wyo. 2018) (quoting *Lindstrom v. State*, 2015 WY 28, ¶ 22, 343 P.3d 792, 798 (Wyo. 2015)).

## 2. The 404(b) Notice Requirement, Redux

[¶22] "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." W.R.E. 404(b). Rule 404(b) permits admission of other crimes, wrongs, or acts for certain other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, *provided that* upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." *Id.* (emphasis added). When a defendant files "a pretrial demand for notice of the State's intent to introduce uncharged misconduct evidence, the State must identify the evidence." *Birch v. State*, 2018 WY 73, ¶ 19, 421 P.3d 528, 535 (Wyo. 2018); *Lindstrom*, 2015 WY 28, ¶ 21, 343 P.3d at 797-98. The district court then must hold a hearing in which the State offers a relevant and proper purpose for admissibility under Rule 404(b) and explains why the evidence is more probative than unfairly prejudicial. *Birch*, 2018 WY 73, ¶ 19, 421 P.3d at 535. In that

7

hearing, the district court "must then conduct an 'exacting analysis'" of the *Gleason* factors:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Id.*; *Putnam*, 2020 WY 133, ¶ 31, 474 P.3d at 622; *Gleason*, 2002 WY 161, ¶ 18, 57 P.3d at 340. In *Howard v. State*, 2002 WY 40, ¶¶ 20-23, 42 P.3d 483, 489-91 (Wyo. 2002), we adopted the 404(b) notice requirement in the Federal Rules of Evidence in order to facilitate pretrial hearings.[1] *See also Gleason*, 2002 WY 161, ¶ 18 n.2, 57 P.3d at 340 n.2 (expressing a firm preference for pre-trial hearings). Our decision to adopt a notice requirement in *Howard* was motivated not only to "enhance the defendant's prospects of receiving due process and a fair trial," but to reduce the need for the district court to make significant evidentiary rulings amidst the "heat and pressure of a trial, with the jury twiddling its thumbs in the next room." *Id.* at ¶ 23, 42 P.3d at 491.[2] It was also because the State in *Howard* waited five months, until the morning of trial, to respond to the defendant's demand for notice of its intent to use 404(b) evidence. *Id.* at ¶¶ 5, 14, 42 P.3d at 485, 487.

[¶23] The State cites *Reay v. State*, 2008 WY 13, ¶¶ 15-19, 176 P.3d 647, 652-53 (Wyo. 2008) and *Schreibvogel v. State*, 2010 WY 45, ¶¶ 33-36, 228 P.3d 874, 885-86 (Wyo. 2010) for the proposition that it is not obligated to provide notice when the State does not intend to use the evidence, or does not recognize it as 404(b) evidence. But *Reay* and *Schreibvogel* concerned situations where all parties, including the State, were surprised by witness testimony that inadvertently mentioned a defendant's prior bad acts. In *Reay*, when the prosecution asked a witness, a neighbor of the victim, "[i]s that pretty much all that you got out of her?" the witness replied the victim had told him about previous

---

[1] In 2008, W.R.E. 404(b) was modified:

> Continued lack of adherence to the procedures this Court established by case law necessitated the amendment of our rules and we have now joined federal courts and the growing list of state jurisdictions that have mandated timely pretrial notice by the State of its intent to introduce uncharged misconduct evidence.

*Heywood v. State*, 2009 WY 70, ¶ 18, 208 P.3d 71, 75 (Wyo. 2009) (Kite, J., specially concurring).

[2] *But see Volpi v. State*, 2018 WY 66, ¶ 17, 419 P.3d 884, 890 (Wyo. 2018) ("We recognize that, at times, the trial court can only make a conditional 404(b) ruling pretrial, and must make a final ruling during trial after determining other evidentiary matters such as foundation.") (quoting *Garrison v. State*, 2018 WY 9, ¶ 18 n.2, 409 P.3d 1209, 1215 n.2 (Wyo. 2018)).

instances of domestic violence involving the defendant. *Id.* at ¶ 15, 176 P.3d at 652. The question was not a deliberate "attempt to solicit improper evidence," and the answer was "somewhat nonresponsive." *Id.* at ¶ 19, 176 P.3d at 653. In *Schreibvogel*, the prosecution asked the former cellmate of the defendant what the defendant had told him, and he replied the defendant said he was "coked up" at the time he committed a sexual assault and robbery. *Id.* at ¶ 34, 228 P.3d at 886. In *Schreibvogel*, the State could plausibly argue it was surprised by the statement. *Id.* at ¶ 35, 228 P.3d at 886. The State cannot argue that statements in a recorded call are either surprising or non-responsive.

[¶24] This case is closer to *Nelson v. State*, where the investigating officer testified about the defendant's previous drug activity, although the State had not responded to the defendant's pretrial 404(b) demand. 2010 WY 159, ¶¶ 28-31, 245 P.3d 282, 288-90 (Wyo. 2010). There, as here, the State cited *Schreibvogel* for support. *Id.* at ¶ 31, 245 P.3d at 290. We said:

> This is not a case like *Schreibvogel*, where the witness giving the testimony was a former cellmate of the defendant's who may have been difficult to prepare for trial. Rather, the witness who gave the testimony here was an experienced deputy sheriff and trained drug investigator working with the prosecutor to convict Ms. Nelson. It is difficult to believe the prosecutor had not discussed his testimony with him before trial. If the intent was not to have him testify about other drug sales, the prosecutor should have directed him not to do so. This case also is not like *Reay*, where the testimony was "somewhat nonresponsive" and the prosecution assured the district court the witness had been admonished not to testify about other assaults. Deputy Proffitt responded directly to the prosecutor's question and the prosecutor made no assurances he had advised the deputy not to testify about Ms. Nelson's statement concerning other drug sales. Under these circumstances, the prosecutor's assertion that he did not intend to introduce testimony of other drug sales is not sufficient to overcome the 404(b) notice requirement.

*Id.* at ¶ 35, 245 P.3d at 291. *See also Broberg*, 2018 WY 113, ¶ 18, 428 P.3d at 172 (State "absolutely should have identified the digital anal penetration evidence as potential 404(b) evidence"). Here, the State went a step further than it did in *Nelson* and *Broberg* because the evidence was not arguably unpredictable witness testimony, but a recording which the State had the foresight to list pretrial as an exhibit.

[¶25] The State argues its "envisioned method of admitting Mitchell's statements through Special Agent Broad's testimony would have avoided any Rule 404(b) issues,"

9

which suggests the State was aware of 404(b) issues. It is true that one way to untangle the two sets of statements was through the testimony of Special Agent Broad about what he overheard. The State asserts the admission of the recordings was the "logical and foreseeable result of Mitchell's invocation of the best evidence rule." But trials rarely, if ever, go according to plan. What was logical and foreseeable was that the State's attempt to have Special Agent Broad testify to some portions of the recorded conversation would have drawn an objection. *See Nelson*, 2010 WY 159, ¶ 38, 245 P.3d at 291-92 ("prosecutors can[not] avoid claims that they failed to give the required notice by simply asserting they did not intend to introduce the evidence"); *United States v. Vega*, 188 F.3d 1150, 1154 (9th Cir. 1999) ("It is of no consequence that the government did not know with absolute certainty that it would introduce that evidence until the defendant took the stand. [Fed. R. Evid. 404(b)] mandates that the government provide notice even if the government intends to introduce the evidence for impeachment or for possible rebuttal.") (emphasis omitted).

[¶26] The State next complains that the problem could have been avoided had Mr. Mitchell heeded this Court's advice that "defense counsel . . . raise an objection at trial to any evidence that may run afoul of W.R.E. 404(b)." *Schreibvogel*, 2010 WY 45, ¶ 33, 228 P.3d at 886. The State disregards the language immediately before that quote, which affirms our holding that "a pretrial demand for notice of the State's intent to use 404(b) evidence satisfies the objection requirement." *Id.* Although we continue to urge defendants to be vigilant, insisting they must also object at trial would render the *Howard* rule superfluous.

[¶27] We have excused the State's failure to notice 404(b) evidence, for a variety of reasons. *See, e.g.*, *Kuebel v. State*, 2019 WY 75, ¶¶ 12-23, 446 P.3d 179, 184-86 (Wyo. 2019) (State had a right to question Chief of Police to rebut inconsistent testimony); *Wiese*, 2016 WY 72, ¶¶ 8-24, 375 P.3d at 807-09 (no prejudice when State introduced physical evidence to rebut defendant's theory of defense); *Lindstrom*, 2015 WY 28, ¶¶ 14-23, 343 P.3d at 796-98 (no prejudice given the magnitude of evidence against the defendant); *Kidwell v. State*, 2012 WY 91, ¶¶ 12-15, 279 P.3d 540, 543-45 (Wyo. 2012) (no prosecutorial misconduct because unnoticed testimony did not implicate any act of the defendant); *Marquess v. State*, 2011 WY 95, ¶ 11, 256 P.3d 506, 510 (Wyo. 2011) (unnoticed evidence was not uncharged misconduct evidence, but instead was admissible as "an inseparable part of the whole deed"), *overruled on other grounds by Jones v. State*, 2019 WY 45, ¶ 25, 439 P.3d 753, 762 (Wyo. 2019); *Palmer v. State*, 2009 WY 129, ¶¶ 8-14, 218 P.3d 941, 943-45 (Wyo. 2009) (no abuse of discretion because the trial court conducted a *Gleason* analysis mid-trial and found the testimony admissible); *Heywood*, 2009 WY 70, ¶¶ 10-15, 208 P.3d at 73-74 (no prejudice); *Leyva v. State*, 2007 WY 136, ¶¶ 17-33, 165 P.3d 446, 452-55 (Wyo. 2007) (State's belief the evidence was not subject to Rule 404(b) because it was intrinsic to the crime charged, notice failure was not in bad faith, or to surprise the defendant unfairly at trial); *Bromley v. State*, 2007 WY 20, ¶¶ 23-29, 150 P.3d 1202, 1210-12 (Wyo. 2007) (reversal not required because unnoticed

testimony was brief and of the same nature as other witness testimony the court analyzed in a *Gleason* hearing); *Cazier v. State*, 2006 WY 153, ¶¶ 22-33, 148 P.3d 23, 31-34 (Wyo. 2006) (unnoticed testimony did not implicate Rule 404(b) because it was used to impeach a witness). However, as we said in *Leyva*, "When there is any question that evidence is subject to W.R.E. 404(b), the State should list that evidence in response to a defendant's pretrial demand." *Id.* at ¶ 32, 165 P.3d at 455.

[¶28] Yet the State continues to disregard the requirement to provide 404(b) notice. *See Blanchard*, 2020 WY 97, ¶¶ 18-28, 468 P.3d at 691-94 (State "inexplicably" failed to respond to defendant's pretrial demand, then called three witnesses to testify that the defendant exposed himself to his stepdaughter prior to the sexual assault and incest he was charged with); *Vinson*, 2020 WY 93, ¶¶ 6-29, 467 P.3d at 1011-15 (State should have provided notice of its intent to introduce evidence that defendant had non-consensual sex with victim on night of assault and battery because intrinsic evidence is still subject to a 404(b) analysis when it implicates uncharged misconduct). The State argues that its failure to notify the defendant was not "in bad faith, or to surprise the defendant unfairly at trial." *Leyva*, 2007 WY 136, ¶ 32, 165 P.3d at 455. Rule 404(b) requires more than the absence of bad faith. We gave this caution in *Blanchard*:

> We assume that had Mr. Blanchard objected to the 404(b) evidence, the district court would have excluded it. We also remind prosecutors, however, that they have an ethical obligation to comply with our long-established procedure governing the introduction of 404(b) evidence, and we caution against a strategy of bypassing that procedure in favor of a harmless error review.

*Id.* at ¶ 20 n.2, 468 P.3d at 692 n.2 (citations omitted). In *Putnam*, we "commend[ed] the prosecutor for his proactive approach in meeting his ethical obligation to comply with this Court's long-established procedure governing the introduction of 404(b) evidence." 2020 WY 133, ¶ 27, 474 P.3d at 620. We also noted such compliance to 404(b) notice requirements is rare. *Id.* at ¶ 27 n.3, 474 P.3d at 620 n.3. Prosecutors should err on the side of providing pretrial notice, lest future failures to do so are appealed as prosecutorial misconduct. *See Kidwell*, 2012 WY 91, ¶¶ 9-15, 279 P.3d at 543-45.

[¶29] In this appeal, we follow our usual analysis. When there is no *Gleason* hearing at or before trial, we can only look to whether admission was prejudicial. *Vinson*, 2020 WY 93, ¶¶ 23-24, 467 P.3d at 1014. We find no reasonable probability the verdict would have been more favorable without the 404(b) evidence. The garbage bag that Mr. Mitchell said contained his clothing also contained money bands and a Ross department store shopping bag. The sweatshirt he donned during the stop still had a Ross tag attached when he was taken into custody. A jury could reasonably conclude these facts connected Mr. Mitchell to a shared plan involving the large amount of marijuana that was

11

held in bags with Ross tags attached. The amount, combined with the way the marijuana was packaged, the money bands, and the presence of a smaller user amount the men admitted to possessing for personal use, could lead a jury to conclude the men possessed the bulk of the marijuana for the purpose of distribution. While it is possible Mr. Mitchell's statements on the call painted him in a negative light, those statements were not highlighted, nor were they repeated in the State's closing. *Broberg*, 2018 WY 113, ¶ 20, 428 P.3d at 172-73. Because we find a reasonable probability Mr. Mitchell would have been convicted with or without the 404(b) statements, we find no prejudice justifying reversal.

## II. The District Court Did Not Abuse Its Discretion When It Refused Mr. Mitchell's Offered Jury Instruction

[¶30] Mr. Mitchell claims the district court abused its discretion by refusing to give the jury instruction he offered which modified the Wyoming Criminal Pattern Jury Instruction on constructive possession. We review rulings on jury instructions for abuse of discretion. *Dugan v. State*, 2019 WY 112, ¶ 34, 451 P.3d 731, 742 (Wyo. 2019), *cert. denied*, 140 S.Ct. 1298, 206 L.Ed.2d 377 (2020). District courts have "substantial latitude to tailor jury instructions to the facts of the case," and we will not find reversible error when the "instructions correctly state the law and adequately cover the issues presented in the trial." *Dugan*, 2019 WY 112, ¶ 34, 451 P.3d at 742 (quoting *Birch*, 2018 WY 73, ¶ 12, 421 P.3d at 533).

[¶31] Mr. Mitchell's offered instruction would have instructed the jury that Mr. Mitchell did not necessarily have the power and intent to control the drugs simply because he was aware of their presence within the vehicle. His proposal would have modified Wyoming Criminal Pattern Jury Instruction 111.01A (2018), to include the sentence in bold:

> YOU ARE INSTRUCTED that "possession" as that term is used in this case may be of two kinds: actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is in actual possession.
>
> A person who, although is not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing either directly or through another person or persons, is in constructive possession of it.
>
> **However, having knowledge that drugs are in one's presence cannot be equated with proof of the power and intent to control.**

12

You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

The additional sentence is a quote from *Regan*, 2015 WY 62, ¶ 24, 350 P.3d at 708. In *Regan*, the defendant witnessed his passenger load marijuana into his vehicle in Denver, then drove to Gillette, where the passenger directed him to three locations. *Id.* at ¶¶ 3-6, 350 P.3d at 704. The defendant waited in the vehicle while the passenger went into each location and made sales. *Id.* at ¶ 6, 350 P.3d at 704. This Court considered whether the State proved all the elements of felony possession. "[T]o convict for possession of illegal drugs, the prosecution must prove beyond a reasonable doubt that the accused: (1) either individually or jointly with another exercised dominion and control over the substance; (2) had knowledge of its presence; and (3) had knowledge that the substance was a controlled substance." *Id.* at ¶ 15, 350 P.3d at 706. We found the evidence insufficient to support Mr. Regan's possession charge because the State did not adequately prove that, despite his knowledge of the presence and illegal nature of the drugs in the car, Mr. Regan had the intention to exercise dominion and control over them. *Id.* at ¶ 26, 350 P.3d at 708. Even though Mr. Regan had the power to control the marijuana by virtue of his ownership of the car and his exclusive access to it while his passenger exited the vehicle to conduct sales, the State had not established both power *and* intent. *Id.* at ¶¶ 18-19, 350 P.3d at 706-07. We held that "knowledge that drugs are in one's presence cannot be equated with proof of the power and intent to control." *Id.* at ¶¶ 23-24, 350 P.3d at 707-08. In *Regan*, facts other than knowledge weighed against a finding of intent. He stated to the arresting officer that when the passenger offered him the opportunity to participate in the transactions, he declined because "it wasn't worth the risk." *Id.* at ¶ 26, 350 P.3d at 708. The passenger in Mr. Regan's case testified the marijuana belonged exclusively to him. *Id.* at ¶ 7, 350 P.3d at 704. In contrast, Mr. Mitchell did not affirmatively distance himself from the marijuana, and Mr. Feser did not absorb blame for it.

[¶32] "Instructions are sufficient if they correctly state the law, they are not misleading, and they permit the parties to argue their respective theories of the case." *Merit Energy Co., LLC v. Horr*, 2016 WY 3, ¶ 22, 366 P.3d 489, 496 (Wyo. 2016). Mr. Mitchell claims the pattern instruction was unsuited to his case and, by denying his offered instruction, the district court denied him the ability to inform the jury that the evidence was insufficient to support conviction. However, the pattern instruction correctly informed the jury that the elements of the crime were that Mr. Mitchell knowingly had both the power and intention, at a given time, to exercise dominion and control over the drugs. Mr. Mitchell was free to argue that either power or intention was lacking. He was free to argue that even if he knew about the drugs, the jury could refuse to equate his knowledge alone with intent. In fact, he did argue in closing that the existence of drugs

13

in one's presence is not enough to be convicted of possession "[a]nd you will see in the instructions that it takes more than that."  The district court did not abuse its discretion when it refused Mr. Mitchell's proposed jury instruction.

### III.   The Evidence Was Sufficient to Convict Mr. Mitchell on the Charges of Possession With Intent to Deliver and Conspiracy to Deliver a Controlled Substance

[¶33]  Mr. Mitchell claims the evidence was not sufficient to convict him of possession with intent to deliver or conspiracy to deliver a controlled substance.  We review sufficiency of the evidence claims with great deference to the finder of fact. *Matter of LCH*, 2019 WY 13, ¶ 8, 434 P.3d 100, 102 (Wyo. 2019).  We need not determine whether the evidence established the defendant's guilt beyond a reasonable doubt. *Pyles v. State*, 2020 WY 13, ¶ 6, 456 P.3d 926, 929 (Wyo. 2020) (citing *Thompson v. State*, 2018 WY 3, ¶ 14, 408 P.3d 756, 760 (Wyo. 2018)).  We need only ask "whether the evidence could reasonably support the jury's verdict." *Pyles*, 2020 WY 13, ¶ 6, 456 P.3d at 929 (citation omitted).  We "examine the evidence in the light most favorable to the State," accepting the State's favorable evidence as true and giving "the State's evidence every favorable inference which can reasonably and fairly be drawn from it." *Id.* (quotation marks and citations omitted).  We will not "re-weigh the evidence or re-examine the credibility of the witnesses, and we disregard any evidence favorable to the appellant that conflicts with the State's evidence." *Id.* (quotation marks and citation omitted).

[¶34]  Mr. Mitchell was charged with possession with intent to deliver, under Wyo. Stat. Ann. § 35-7-1031(a)(ii) (LexisNexis 2019) which provides:

> (a)   Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.  Any person who violates this subsection with respect to:
>
> * * *
>
> (ii)   Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both[.]

Marijuana is a Schedule I controlled substance.  Wyo. Stat. Ann. § 35-7-1014(d)(xiii); *Pyles*, 2020 WY 13, ¶ 7, 456 P.3d at 929.  Possession may be actual or constructive. *Huckins v. State*, 2020 WY 21, ¶ 12, 457 P.3d 1277, 1279 (Wyo. 2020) (citing *Regan*,

2015 WY 62, ¶ 12, 350 P.3d at 705). Actual possession may be found when the defendant has direct physical custody over the drugs. *Huckins*, 2020 WY 21, ¶ 12, 457 P.3d at 1279. Constructive possession may be found when the defendant has custody alone or with others. *Id.* at ¶ 12, 457 P.3d at 1279-80 (citing *Taylor v. State*, 2011 WY 18, ¶ 11, 246 P.3d 596, 599 (Wyo. 2011)). When the defendant is not in exclusive possession, the State must show he had an individual connection to the marijuana to prove constructive possession. *Pyles*, 2020 WY 13, ¶ 14, 456 P.3d at 930; *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998). The elements of possession are satisfied when the defendant "(1) either individually or jointly with another exercised dominion and control over the substance; (2) had knowledge of its presence; and (3) had knowledge that the substance was a controlled substance." *Regan*, 2015 WY 62, ¶ 15, 350 P.3d at 706. Power to control may be proven where the defendant had an "appreciable ability to guide the destiny of the contraband." *Id.* at ¶ 18, 350 P.3d at 706 (citing *United States v. Al–Rekabi*, 454 F.3d 1113, 1118 (10th Cir. 2006)).

[¶35] The jury could reasonably infer from the facts before it that Mr. Mitchell had an individual connection with, and an appreciable ability to guide the destiny of, the marijuana. Mr. Mitchell was in a compact car with two dogs, another adult, and four large suitcases filled with over 74 pounds of marijuana packaged in a form consistent with delivery. The marijuana produced a strong odor. Among Mr. Mitchell's possessions was a marijuana grinder, a stack of money bands, and a Ross department store shopping bag. Attached to his sweatshirt was a Ross department store tag. Attached to the suitcases were Ross department store tags. The evidence was sufficient to convict Mr. Mitchell of possession with intent to deliver.

[¶36] Mr. Mitchell was also charged with conspiracy (Wyo. Stat. Ann. § 35-7-1042) to deliver a controlled substance (Wyo. Stat. Ann. § 35-7-1031(a)(i)). A conspiracy is "an agreement between two or more people to commit an unlawful act." *Jordin*, 2018 WY 64, ¶ 19, 419 P.3d at 532-33 (quoting *Ekholm*, 2004 WY 159, ¶ 22, 102 P.3d at 207 (citation omitted)). The elements are "(1) at least a tacit understanding between the defendant and a coconspirator to commit an act violative of Wyoming's controlled substances act, and (2) intent by the defendant to commit the elements of the offense which was the object of the understanding." *Ekholm*, 2004 WY 159, ¶ 22, 102 P.3d at 207 (quoting *Sotolongo–Garcia v. State*, 2002 WY 185, ¶ 14, 60 P.3d 687, 690 (Wyo. 2002)); *see also Cardenas v. State*, 2014 WY 92, ¶ 9, 330 P.3d 808, 811 (Wyo. 2014). The understanding need not be an express meeting of the minds as if to form a contract. *Jordin*, 2018 WY 64, ¶ 19, 419 P.3d at 533 (citing *Ekholm*, 2004 WY 159, ¶ 22, 102 P.3d at 207). Due to the covert nature of the crime, the State may rely upon circumstantial evidence to establish the conspiracy. *Jordin*, 2018 WY 64, ¶ 19, 419 P.3d at 533. Such evidence can include "inferences drawn from the course of conduct of the alleged conspirators." *Id.* (quoting *Ekholm*, 2004 WY 159, ¶ 22, 102 P.3d at 208). As we explained above, the jury could infer from the uncontroverted facts of Mr. Mitchell's

15

conduct and his statements to Mr. Feser that he conspired to deliver a controlled substance. The evidence was, therefore, sufficient.

## *CONCLUSION*

[¶37] Because Mr. Mitchell failed to prove the district court abused its discretion in his evidentiary and jury instruction challenges, and he failed to prove the evidence was insufficient to convict him, we affirm.