# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 53

**APRIL TERM, A.D. 2024**

**May 14, 2024**

KENYA HUNTER BINDNER, JR.,

Appellant
(Defendant),

v.

S-22-0295, S-23-0215

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Stuart S. Healy III, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.

*Representing Appellee:*
> Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General. Argument by Mr. Woykovsky.

*Before FOX, C.J., and KAUTZ\*, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Kenya H. Bindner was convicted of possession of marijuana and possession of methamphetamine with intent to deliver. On appeal he challenges the sufficiency of the evidence to support his convictions and the district court's ruling that he was not denied the effective assistance of counsel. We affirm.

## ISSUES

[¶2]    This appeal presents two issues:

> 1.    Was the evidence sufficient to prove Mr. Bindner constructively possessed methamphetamine and marijuana?

> 2.    Was Mr. Bindner denied the effective assistance of counsel when his attorney failed to investigate a potentially exculpatory witness statement?

## FACTS

[¶3]    At around 7:20 p.m. on January 12, 2022, deputies from the Campbell County Sheriff's Office and agents from the Division of Criminal Investigation (DCI) executed a search warrant at a residence where Kenya Bindner lived with his girlfriend, Danielle Oster, and another roommate, Keerieann McMacken. The deputies knocked and announced themselves three times. After they received a report that someone inside was observed moving rapidly toward the back of the residence, they used a ram to force the door open.

[¶4]    When the deputies entered, Mr. Bindner was standing about three feet from a coffee table just inside the doorway, and Ms. Oster was coming out of a bathroom in the back of the residence. Ms. McMacken was not in the home.

[¶5]    In the bathroom where Ms. Oster had been, the search team found four Ziploc bags containing about thirty-one grams of methamphetamine floating in the toilet. On the coffee table, they found a red box containing over forty grams of methamphetamine and over twenty grams of marijuana. The methamphetamine consisted of large "chunks" or "shards" of crystal methamphetamine in a large Ziploc bag. The marijuana was divided into five plastic bags in a larger Ziploc bag.

[¶6]    The search team also found drug paraphernalia in the residence. On the coffee table, they found small unused jewelers' bags, commonly used to package controlled substances. Next to an adjacent couch, they found a scale of the type used to weigh

1

controlled substances for sale. On the coffee table and throughout the residence, they found glass pipes and straws that can be used to smoke or ingest both methamphetamine and marijuana. By the front door, they found a whiteboard that appeared to be a "'pay-owe' sheet" listing buyers and what they owed.

[¶7]    The State charged Mr. Bindner with one count of possession of methamphetamine with intent to deliver, one count of felony possession of methamphetamine, and one count of misdemeanor possession of marijuana. In its case management order, the district court ordered the parties to file with the court and serve upon all counsel, not less than three days before the pretrial conference, "a list of all witnesses (except rebuttal witnesses) to be called together with a short summary of the expected testimony of each[.]"

[¶8]    In his pretrial memorandum, Mr. Bindner listed three witnesses, including Isaac McKenna. The summary of his testimony stated that he would "be able to testify as to his personal observations of the Defendant and the [searched] residence[.]" During the pretrial conference, the State sought clarification of the expected testimony of the defense witnesses. The district court's memorandum of the pretrial conference noted that "Defendant explained these witnesses will testify as to their personal knowledge regarding alleged drug use and sales of drugs at Defendant's home."

[¶9]    Mr. Bindner's defense at trial was that while methamphetamine and marijuana were present in the residence, the drugs were not his and he did not possess them. To that end, Mr. Bindner testified on his own behalf and called Mr. McKenna as a witness. Before Mr. McKenna's testimony, the State again raised concerns regarding the scope of his testimony and requested a proffer. Defense counsel proffered that Mr. McKenna would testify he had knowledge of the methamphetamine found on the coffee table and had seen it the day before the search in the possession of Ms. McMacken, Mr. Bindner's roommate. The State objected to the previously undisclosed testimony and added that it also objected on W.R.C.P. 26.2 grounds because it had not received a written statement from Mr. McKenna. After defense counsel assured the district court its investigator had only just learned of Mr. McKenna's information, and no written statements or notes existed, the court allowed Mr. McKenna's testimony.

[¶10] Mr. McKenna testified he was good friends with Mr. Bindner and knew his girlfriend, Ms. Oster, and his other roommate, Ms. McMacken. He testified he recognized the shards of methamphetamine depicted in the State's exhibit, and Ms. McMacken had it with her when she visited him at his home the evening before the search warrant was executed on Mr. Bindner's residence. On cross-examination, the State questioned Mr. McKenna's late disclosure of his information, and he responded that he had previously provided the information to defense counsel in a written statement.

[¶11] The State renewed its objection under W.R.C.P. 26.2. Defense counsel conceded that Mr. McKenna had provided a signed statement on April 22, 2022. He informed the district court that he thought the statement contained only a character reference when he had earlier told the court there was no written statement, but on closer review, he saw that it also included the information Mr. McKenna had just testified to. Defense counsel conceded the statement should have been produced in response to the State's demand for discovery. The State asked that Mr. McKenna's testimony be stricken pursuant to W.R.C.P. 26.2, and the court granted that request.

[¶12] The jury found Mr. Bindner guilty on all three counts. The district court dismissed the count for possession of methamphetamine on double jeopardy grounds and sentenced Mr. Bindner to a combined prison term of five to eight years on the remaining counts. Mr. Bindner timely appealed to this Court and also moved pursuant to W.R.A.P. 21 for a new trial based on a claim of ineffective assistance of counsel. This Court stayed briefing in Mr. Bindner's appeal pending the outcome of his Rule 21 motion.

[¶13] In his Rule 21 motion, Mr. Bindner claimed his counsel was deficient in his failure to produce Mr. McKenna's written statement in response to the State's demand and in incorrectly representing to the district court that no statement existed. He argued these deficiencies led to the exclusion of Mr. McKenna's testimony and prejudiced his defense. After an evidentiary hearing, the court concluded that defense counsel's performance was deficient in that he failed to reasonably investigate Mr. McKenna's April 22, 2022, statement, which ultimately led the court to strike Mr. McKenna's testimony. The court concluded, however, that based on the record, Mr. Bindner had not demonstrated a reasonable probability that the result of his trial would have been different. Based on his failure to show prejudice, the court denied Mr. Bindner's motion for a new trial.

[¶14] Mr. Bindner timely appealed the district court's denial of his Rule 21 motion, and we consolidated his appeals.

## DISCUSSION

### I. The evidence was sufficient to prove Mr. Bindner constructively possessed methamphetamine and marijuana.

[¶15] Mr. Bindner does not challenge the sufficiency of the evidence to establish an intent to deliver, but he claims the evidence was insufficient to support a finding that he had constructive possession of the methamphetamine and marijuana found in his residence. In considering the sufficiency of the evidence claim, we "need not determine whether the evidence established the defendant's guilt beyond a reasonable doubt." *Borja v. State*, 2023 WY 12, ¶ 8, 523 P.3d 1212, 1215 (Wyo. 2023) (citing *Mitchell v. State*, 2020 WY 142, ¶ 33, 476 P.3d 224, 237 (Wyo. 2020)). Our review is instead as follows:

We must determine whether the evidence could reasonably support the jury's verdict. We do not reweigh the evidence or reexamine the credibility of witnesses, but examine the evidence in the light most favorable to the State. We accept the State's evidence as true, giving it every favorable inference which can reasonably and fairly be drawn from it. We disregard any evidence favorable to the appellant that conflicts with the State's evidence.

*Borja,* 2023 WY 12, ¶ 8, 523 P.3d at 1215 (quoting *Mackley v. State,* 2021 WY 33, ¶ 24, 481 P.3d 639, 645 (Wyo. 2021)).

[¶16] Mr. Bindner was convicted and sentenced for violations of Wyo. Stat. Ann. § 35-7-1031(a)(i) and (c)(i). Subsection (a) makes it unlawful to possess a controlled substance with the intent to deliver; subsection (c) makes it unlawful to knowingly or intentionally possess a controlled substance. *Thomas v. State,* 2003 WY 53, ¶ 17, 67 P.3d 1199, 1204 (Wyo. 2003). Both crimes require possession of a controlled substance, but possession may be actual or constructive. *Mitchell v. State,* 2020 WY 142, ¶ 34, 476 P.3d 224, 237 (Wyo. 2020) (citing *Huckins v. State,* 2020 WY 21, ¶ 12, 457 P.3d 1277, 1279 (Wyo. 2020)). "Actual possession may be found when the defendant has direct physical custody over the drugs." *Id.* "Constructive possession may be found when the defendant has custody alone or with others." *Id.*

[¶17] When a defendant is not in exclusive possession of a controlled substance, the State must show he had an individual connection to the substance to prove constructive possession. *Mitchell,* 2020 WY 142, ¶ 34, 476 P.3d at 237 (citing *Pyles v. State,* 2020 WY 13, ¶ 14, 456 P.3d 926, 930 (Wyo. 2020)). Constructive possession requires a showing that the defendant: "(1) either individually or jointly with another exercised dominion and control over the substance; (2) had knowledge of its presence; and (3) had knowledge that the substance was a controlled substance." *Mitchell,* 2020 WY 142, ¶ 34, 476 P.3d at 238 (quoting *Regan v. State,* 2015 WY 62, ¶ 15, 350 P.3d 702, 706 (Wyo. 2015)). Power to control may be found where a defendant had an "appreciable ability to guide the destiny of the contraband." *Mitchell,* 2020 WY 142, ¶ 34, 476 P.3d at 238 (quoting *Regan,* 2015 WY 62, ¶ 18, 350 P.3d at 706). "[E]vidence showing the defendant knew controlled substances were in his presence does not, by itself, establish he had the power and intent to control them." *Pyles,* 2020 WY 13, ¶ 9, 456 P.3d at 929 (quoting *Regan,* 2015 WY 62, ¶ 24, 350 P.3d at 708).

[¶18] Mr. Bindner contends the State failed to prove that he intended to control the methamphetamine and marijuana found in his residence and thus failed to establish the dominion and control required to show constructive possession. He likens the evidence in this case to that in *Regan,* where this Court held the evidence was insufficient to establish constructive possession. *Regan* is distinguishable.

4

[¶19] In *Regan*, the defendant drove his roommate from Denver to Gillette. 2015 WY 62, ¶ 3, 350 P.3d at 704. A Gillette police officer stopped his vehicle and in a subsequent search found a pound and a half of marijuana, paraphernalia associated with the sale of marijuana, and $1,000 in cash. *Id.*, ¶¶ 3-4, 350 P.3d at 704. After his arrest, Regan admitted to driving his roommate to three different locations to deliver marijuana, but he maintained he stayed in the car and told his roommate he did not want to be involved. *Id.*, ¶¶ 5-6, 350 P.3d at 704. Regan's roommate testified at Regan's trial and corroborated his account. *Id.*, ¶ 7, 350 P.3d at 704. A jury convicted Regan of felony possession of marijuana, and we reversed, explaining:

> Regan did not initiate the illegal activity. Trujillo directed Regan to specific locations at which he delivered the marijuana and collected money himself. Regan did not get out of the vehicle. There was no evidence indicating that Regan arranged any of the interactions, took any part in any negotiations, or made any attempt at all to associate himself with or influence the destiny of the marijuana. In fact, Officer Brothers testified that Regan told him that he refused to become involved in the transactions "because it wasn't worth the risk[.]" Regan's complete and purposeful noninvolvement in these activities does nothing to meet the State's burden to prove that he had the intent and power to exercise dominion and control over the drugs.

*Id.*, ¶ 26, 350 P.3d at 708.

[¶20] In this case, the evidence is different. Edward Rosier, II, a DCI agent involved in the search of Mr. Bindner's residence, testified concerning the valuation of methamphetamine. He testified that based on 2022 values, a gram of methamphetamine would sell for $100. He further testified that when methamphetamine is sold in larger quantities, the price per gram goes down. Thus an 8-ball, which is 3.5 grams, would sell for $150 to $200.

[¶21] On cross-examination, Mr. Bindner admitted to the following text message exchange with Ms. Oster on January 10, 2022, two days before his residence was searched:

Mr. Bindner: Love, how much are you wanting for the white X-mas ball?

Ms. Oster:     the white X-mas ball?

Mr. Bindner: 175, 200?

5

Ms. Oster:     what the fuck r u talking about?
               oh, I'm not getting rid of it that way. I can't afford to.
               why are the cops by the house?

[¶22] "Constructive possession may be proven 'by circumstantial evidence linking together a series of facts allowing a reasonable inference that the defendant had the requisite knowledge and control of the substance.'" *Pyles*, 2020 WY 13, ¶ 8, 456 P.3d at 929 (quoting *Taylor v. State*, 2011 WY 18, ¶ 11, 246 P.3d 596, 599-600 (Wyo. 2011)). Given Agent Rosier's testimony, the jury could have reasonably inferred from the text exchange between Mr. Bindner and Ms. Oster that he asked how much she wanted to charge for an 8-ball of the methamphetamine, and she responded she could not afford to sell it in that quantity. This is evidence that Mr. Bindner knew of the methamphetamine and had an "appreciable ability to guide the destiny of the contraband," with an intent to do so. *Mitchell*, 2020 WY 142, ¶ 34, 476 P.3d at 238. The evidence was thus sufficient to establish Mr. Bindner's constructive possession of the methamphetamine. *See Saldana v. State*, 846 P.2d 604, 620 (Wyo. 1993) ("If a defendant is sufficiently associated with the persons having physical custody so that he is able, without difficulty to cause the drug to be produced for a customer, he can also be found by a jury to have dominion and control over the drug and, therefore, possession."); *Wise v. State*, 654 P.2d 116, 119-20 (Wyo. 1982) (evidence established defendant's dominion and control where he initiated transaction and negotiated sale).

[¶23] The evidence was likewise sufficient to establish Mr. Bindner's constructive possession of the marijuana. The marijuana and methamphetamine were contained in the same box on a coffee table that Mr. Bindner was standing three feet from when the search team entered his residence. Although the text message between Mr. Bindner and Ms. Oster did not reference marijuana, the jury could have reasonably inferred that he had dominion and control over both the methamphetamine and the marijuana located in the same box.

## II. *Although the performance of Mr. Bindner's attorney was deficient, that deficiency did not prejudice Mr. Bindner, and his right to effective assistance of counsel was therefore not violated.*

[¶24] "Ineffective assistance of counsel claims 'involve mixed questions of law and fact.'" *Jendresen v. State*, 2021 WY 82, ¶ 36, 491 P.3d 273, 284 (Wyo. 2021) (quoting *Sides v. State*, 2021 WY 42, ¶ 34, 483 P.3d 128, 137 (Wyo. 2021)). "We review the district court's findings of fact for clear error and its conclusions of law de novo." *Id*.

[¶25] A criminal defendant has the right to effective assistance of counsel. *Buckingham v. State*, 2022 WY 99, ¶ 25, 515 P.3d 615, 619 (Wyo. 2022) (citing U.S. Const. amend. VI; Wyo. Const., art. 1, § 10; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct.

6

2052, 2063, 80L. Ed.2d 674 (1984)). To succeed on a claim of ineffectiveness, a defendant "must show both that counsel's performance was deficient, and he was prejudiced as a result." *Buckingham,* 2022 WY 99, ¶ 25, 515 P.3d at 619 (quoting *Steplock v. State,* 2022 WY 12, ¶ 20, 502 P.3d 930, 936 (Wyo. 2022)). Counsel acts deficiently when he "fails to render such assistance as would have been offered by a reasonably competent attorney." *Steplock,* 2022 WY 12, ¶ 20, 502 P.3d at 936-37 (quoting *Neidlinger v. State,* 2021 WY 39, ¶ 53, 482 P.3d 337, 351-52 (Wyo. 2021)). "Prejudice occurs when there is 'a reasonable probability that, absent counsel's deficient assistance, the outcome of appellant's trial would have been different.'" *Steplock,* 2022 WY 12, ¶ 20, 502 P.3d at 936-37 (quoting *Neidlinger,* 2021 WY 39, ¶ 53, 482 P.3d at 351-52).

[¶26]  Mr. Bindner asserts the district court correctly ruled that defense counsel's failure to produce Mr. McKenna's witness statement was deficient performance, but he claims the court erred in failing to find he was prejudiced by the deficiency. We will address both prongs.

### A.    Defense counsel was deficient in his failure to investigate a potentially exculpatory witness statement.

[¶27]  Mr. Bindner approaches the ineffective assistance of counsel claim on the premise that the district court ruled defense counsel's failure to produce Mr. McKenna's witness statement was the deficient performance. That is not the case. The court ruled that defense counsel was deficient in his failure to investigate the witness statement. That failure to investigate ultimately led to a failure to produce the statement and exclusion of Mr. McKenna's testimony, but the court's focus was on the failure to investigate.[1] We find no error in the court's conclusion.

[¶28]  To prove deficient performance, a defendant must show "counsel failed to render such assistance as would have been offered by a reasonably competent attorney." *Mills v. State,* 2023 WY 76, ¶ 18, 533 P.3d 182, 189 (Wyo. 2023) (quoting *Weston v. State,* 2019 WY 113, ¶ 36, 451 P.3d 758, 768 (Wyo. 2019)). "We invoke a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. The paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of

---

[1] Although the State argued at trial that defense counsel violated W.R.C.P. 26.2, and for the exclusion of Mr. McKenna's testimony on that basis, it contends on appeal that defense counsel did not violate Rule 26.2. Setting aside the State's change in position, the State did not seek review of the district court's Rule 26.2 ruling through any mechanism available to it. *See Larsen v. State,* 2024 WY 4, ¶¶ 12-16, 541 P.3d 439, 443-44 (Wyo. 2024) (discussing State's options for seeking review of adverse rulings in criminal cases). Whether the court erred in excluding Mr. McKenna's testimony is therefore not a question before the Court.

professionally competent assistance." *Mills*, 2023 WY 76, ¶ 18, 533 P.3d at 189 (Wyo. 2023) (cleaned up) (quoting *Winters v. State*, 2019 WY 76, ¶ 12, 446 P.3d 191, 199 (Wyo. 2019)).

[¶29] "To perform adequately 'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Mills,* 2023 WY 76, ¶ 18, 533 P.3d at 189 (quoting *Keats v. State*, 2005 WY 81, ¶ 20, 115 P.3d 1110, 1118 (Wyo. 2005)). "We assess counsel's performance by considering all of the circumstances existing at the time counsel made the investigative decision and apply a heavy measure of deference to counsel's judgments in this regard." *Byerly v. State*, 2019 WY 130, ¶ 96, 455 P.3d 232, 256 (Wyo. 2019) (cleaned up) (quoting *Winters*, 2019 WY 76, ¶ 46, 446 P.3d at 207-08).

[¶30] The district court concluded that "defense counsel failed to conduct a reasonable investigation of Defendant's case when he did not follow-up on, turn over, or even remember, Mr. McKenna's written statement." The court questioned whether defense counsel had read the statement, and the record supports this concern. Defense counsel acknowledged receiving Mr. McKenna's written statement sometime around April 22, 2022. However, defense counsel asserted both at trial and during the Rule 21 hearing that he believed, until just prior to Mr. McKenna's testimony, that Mr. McKenna would provide only character evidence to support Mr. Bindner. Mr. McKenna's written statement did not concern Mr. Bindner's character; it was entirely about Ms. McMacken, and her character and possession of the methamphetamine attributed to Mr. Bindner. Had defense counsel read and considered the statement, it is unlikely he would have been under this misapprehension.

[¶31] While we give deference to defense counsel's judgments regarding investigative decisions, it is apparent in this instance that defense counsel brought no such judgment to any investigation into Mr. McKenna's written statement. We therefore conclude that, in this regard, defense counsel "failed to render such assistance as would have been offered by a reasonably competent attorney."[2] *Mills*, 2023 WY 76, ¶ 18, 533 P.3d at 189. We turn then to the question of whether counsel's deficient performance prejudiced Mr. Bindner.

---

[2] The district court noted that "aside from this critical 'misstep,' defense counsel performed admirably on behalf of Defendant throughout the criminal proceedings."

***B.*** ***Defense counsel's failure to investigate Mr. McKenna's written statement did not prejudice Mr. Bindner.***

[¶32] "Prejudice occurs when there is 'a reasonable probability that, absent counsel's deficient assistance, the outcome of appellant's trial would have been different.'" *Steplock*, 2022 WY 12, ¶ 20, 502 P.3d at 936-37 (quoting *Neidlinger*, 2021 WY 39, ¶ 53, 482 P.3d at 351-52). Mr. Bindner contends that such a reasonable probability exists here because Mr. McKenna was able to identify the precise shards of methamphetamine attributed to Mr. Bindner and place them in Ms. McMacken's possession the evening before law enforcement searched Mr. Bindner's residence. We disagree.

[¶33] This case presents a unique circumstance because Mr. McKenna's testimony was not excluded until after he testified, and we therefore know the entirety of his testimony. Mr. McKenna could not and did not testify that Ms. McMacken claimed exclusive ownership of the methamphetamine in question. He only testified that he recognized the methamphetamine and it was in Ms. McMacken's possession the evening before the search of Mr. Bindner's residence.

[¶34] Mr. McKenna's testimony was of limited value to Mr. Bindner's defense because our law recognizes that dominion and control over a controlled substance may be exercised individually or jointly. *Mitchell*, 2020 WY 142, ¶ 34, 476 P.3d at 238. The jury was instructed to that effect. Thus even if it accepted Mr. McKenna's testimony that he recognized the methamphetamine depicted in the State's exhibit as that possessed by Ms. McMacken on January 11, that would not have precluded it from finding Mr. Bindner possessed it on January 12. This is particularly so since Ms. McMacken was not in the residence on January 12 when law enforcement executed its search warrant, but Mr. Bindner was, and he was standing only three feet from the coffee table where the methamphetamine was found. His presence, her absence, and his text message exchange with Ms. Oster add up to joint dominion and control over the methamphetamine. We thus conclude there is not a reasonable probability that the outcome of Mr. Bindner's trial would have been different had defense counsel properly investigated Mr. McKenna's written statement.

## CONCLUSION

[¶35] The evidence was sufficient to establish Mr. Bindner's constructive possession of methamphetamine and marijuana and thus to sustain his convictions. Defense counsel was deficient in his failure to investigate a potentially exculpatory witness statement, but that deficiency did not prejudice Mr. Bindner's defense, and he therefore was not denied the effective assistance of counsel.